**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **BRIAN CORRIGAN and SHERI BEMENT,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**COVIDIEN LP, COVIDIEN SALES LLC,**<br>**COVIDIEN HOLDING INC. and**<br>**MEDTRONIC, INC.,**<br><br>**Defendants.** | **Case No. 22-cv-10220** |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                  **September 13, 2024**

## I.    Introduction

Plaintiffs Brian Corrigan and Sheri Bement ("Plaintiffs") have filed this product liability

suit against Defendants Covidien LP, Covidien Sales LLC, Covidien Holding Inc. and Medtronic,

Inc. (collectively, "Covidien") alleging breach of warranty for failure to warn (Count II),

negligence for failure to warn (Count III), negligent misrepresentation (Count IV), loss of

consortium (Count V), and unfair and deceptive trade practices in violation of Mass. Gen. L. c.

93A (Count VI).  D. 4.[1]  Covidien has now moved for summary judgment.  D. 55.  Plaintiffs have

moved for leave to file a second amended complaint.  D. 89.  For the reasons stated below, the

---

[1] The Court previously dismissed Count I that alleged breach of warranty for defective
manufacture and design and the portion of Count III that alleged negligent design and manufacture.
D. 22.

Court ALLOWS Covidien's motion for summary judgment, D. 55, and DENIES Plaintiffs' motion for leave to amend, D. 89.

## II.   Factual Background

The Court draws the following facts from the parties' statements of undisputed facts, responses to the same and accompanying exhibits, D. 56; D. 63; D. 68.

### A.   The FDA's MAUDE Database and ASR Reporting

The Food and Drug Administration ("FDA") requires manufacturers to report certain device-related adverse events and product concerns which are stored in the FDA's "Manufacturer and User Facility Device Experience" ("MAUDE") database.  D. 56 at 5-6; D. 63 at 26-27.  The FDA established an Alternative Summary Reporting Program ("ASR Program") in 1997 that allowed manufactures to submit adverse events for certain devices on a quarterly basis and provided an exemption from individual reporting requirements.  D. 56 at 5-6; D. 63 at 27-30.[2] Adverse event reports made prior to 2019 were not publicly available.  D. 56 at 5-6; D. 63 at 28-29.

It is undisputed that Covidien reported adverse events concerning the EEA stapler to the FDA.  D. 56 at 7; D. 63 at 31-33.[3]  In May 2001, the FDA acknowledged Covidien's acceptance into the ASR Program for surgical staplers.  D. 56 at 7; D. 63 at 32-33.  On March 8, 2019, the FDA sent a letter stating that it was concerned about the increasing number of adverse event reports

---

[2] Plaintiffs dispute the quoted material in Covidien's statement of facts because the material is not correctly quoted from the website.  See D. 63 at 27-30.  The Court agrees and instead has relied on facts contained in Exhibit B submitted with Covidien's statement of material facts that supports the underlying, undisputed facts.  See 56-2.

[3] Although Plaintiffs dispute how Covidien used the ASR system, D. 63 at 31-32, they do not dispute that Covidien submitted adverse events concerning the EEA stapler to the FDA.

related to surgical staplers.  D. 63 at 7-8; D. 68 at 7-8.[4]  The FDA ended the ASR program for surgical staplers in 2019.  D. 56 at 7-8; D. 63 at 32-33.

### B.     Plaintiff Brian Corrigan's Surgery

Plaintiff Brian Corrigan ("Corrigan") underwent a laproscopic sigmoidectomy on February 14, 2019 that was performed by Dr. Warren Rose ("Dr. Rose").  D. 63 at 33-34; 68 at 1.  Dr. Rose used an EEA stapler that was manufactured by Covidien to reconnect two pieces of Corrigan's colon.  D. 63 at 33-34; D. 68 at 1.  During the surgery, Dr. Rose tested the anastomosis created by the surgical stapler by conducting a visual inspection and "leak test."  D. 56 at 8; D. 63 at 33-34.  The surgery initially appeared to be successful.  D. 68 at 1.  Within five days after the surgery, however, Corrigan developed an anastomotic leak that required a second surgery on February 20, 2019.  D. 63 at 33-34; D. 68 at 1-2.  Dr. Rose was aware that an anastomotic leak is a risk associated with using a surgical stapler and knew that a stapler malfunction is one possible cause of an anastomotic leak.  D. 56 at 9; D. 67-1 at 11-12, 25, 28-29; D. 63 at 34-36.  At his deposition, Dr. Rose further testified that "the single most likely cause of a leak would be a device failure."  D. 68 at 3-4 (citing D. 63-1 at 17-18); see D. 67-1 at 29.  Dr. Rose testified that he would not have agreed to use a device that hypothetically missed "12 to 15 percent" of the time.  D. 68 at 5 (citing D. 63-1 at 13); see D. 67-1 at 25.  Dr. Rose stated that before he would use an EEA stapler in practice today, he would need to understand "what the FDA was saying about it from what I may or may not have heard."  See 68 at 5-6 (citing 63-1 at 31); see D. 67-1 at 39.

Prior to the surgery, Dr. Rose did not review the instructions for the EEA stapler he used in Corrigan's surgery, D. 56 at 8 (citing D. 56-5 at 8-9); D. 63 at 34-37; D. 67-1 at 9, or EEA

---

[4] Covidien disputes that the March 8, 2019 FDA letter is material to its summary judgment motion because there is no evidence that Dr. Rose reviewed or relied upon this letter but it does not dispute that the FDA sent this letter.  D. 68 at 7-8.

stapler marketing materials.  D. 56 at 9; 67-1 at 23-24); D. 63 at 34-37.  Dr. Rose also had not researched adverse-event reports related to surgical staplers on the FDA's website, had not visited the FDA's adverse event website and generally had not researched surgical stapler adverse events. D. 56 at 9; D. 67-1 at 22-23; D. 63 at 35-37.

### III.    Procedural History

Plaintiffs instituted this action on February 10, 2022, D. 1, and amended their complaint on March 15, 2022.  D. 4.  Covidien moved to dismiss the amended complaint on May 17, 2022. D. 9.  The Court dismissed the breach of warranty for defective manufacture and design claims ("Count I") and the negligence claim ("Count III") to the extent it was predicated on a theory of being negligently designed and marketed, and denied the motion to dismiss as to the other claims. D. 22.  Plaintiffs moved for leave to file a second amended complaint on April 21, 2023, D. 37, which Covidien opposed, D. 38.  The Court denied that motion on the basis that any amendments would be futile.  D. 42.  Covidien moved for an emergency protective order to prevent depositions of two Covidien employees on November 7, 2023.  D. 49, which the Court (Boal, J.) denied.  D. 73.  During the pendency of Covidien's motion for a protective order, Plaintiffs moved to extend fact discovery.  D. 52.  The Court denied the motion except to allow the two Covidien employee depositions to proceed as ordered.  D. 78.

Covidien has now moved for summary judgment, D. 55, and moved to stay all other deadlines pending resolution of the motion for summary judgment, D. 57.  The Court allowed the motion to stay all pending expert deadlines pending the motion for summary judgment. D. 79. Plaintiffs have since moved for leave to file a second amended complaint,  D. 89, which Covidien opposed, D. 93.  The Court heard the parties on the two, pending motions and took the matters under advisement.  D. 99.

## IV.     Discussion

### A.     <u>Additional Time for Discovery is not Warranted</u>

Plaintiffs contend that Covidien's summary judgment motion is premature because Covidien has prevented Plaintiffs from obtaining relevant discovery, the parties have not engaged in expert discovery, there is additional discoverable information that Plaintiffs have not yet obtained from "[Covidien], other parties, and witnesses," and therefore Plaintiffs are entitled to additional discovery under Fed. R. Civ. P. 56(d). D. 63 at 9-12, 38-46.

With the pendency of a summary judgment motion, a non-movant may oppose a motion for summary judgment by seeking additional time for discovery under Fed. R. Civ. P. 56(d). Under Rule 56(d), a non-movant must show by affidavit or declaration that "for specified reasons, it cannot present facts essential to justify its opposition" and seeks further time for discovery, opposes the motion for summary judgment or such other appropriate order. Fed. R. Civ. P. 56(d); <u>Velez v. Awning Windows, Inc.</u>, 375 F.3d 35, 40 (1st Cir. 2004). Even with these requirements of the rule, "[c]onsistent with the salutary purposes underlying Rule 56(f) [precursor to Rule 56(d)], district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter." <u>Resol. Tr. Corp. v. N. Bridge Assocs. Inc.</u>, 22 F.3d 1198, 1203 (1st Cir. 1994). The purpose of this rule is to "safeguard against judges swinging the summary judgment axe too hastily." <u>Id.</u>

Having considered Plaintiffs' filings and the declaration of its counsel, D. 63 at 38-46 ("Pearson Affidavit"), pursuant to Rule 56(d), the Court is not persuaded that additional time for discovery is warranted. The primary basis for Plaintiffs' request for additional discovery—that Covidien has thwarted Plaintiffs' discovery efforts—was previously considered by this Court in its resolution of Plaintiffs' motion to extend fact discovery, D. 52, which the Court denied except

for allowing two depositions of Covidien employees, D. 78, for which the Court (Boal, J.) had denied a protective order.  D. 73 at 8.

As Plaintiffs are contending that they have incomplete discovery to respond to Covidien's summary judgment motion, Plaintiffs must show "good cause for the failure to have discovered the facts sooner; it should set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist; and it should indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." Resol. Tr. Corp., 22 F.3d at 1203.  Significantly, Plaintiffs have failed to demonstrate that further discovery will influence the outcome of the pending summary judgment motion.  The Court notes that Plaintiffs primarily seek additional discovery concerning their alternative failure to warn theory based on an underreporting of adverse events.  See D. 63 at 42-45.  Plaintiffs proffer that the additional discovery they seek such as testimony from an FDA expert, Covidien's employees and a re-deposition of Dr. Rose will allow them to explore, among other things, the "common method of safety communication between the FDA and physicians," D. 63 at 43, Covidien's potential training of its representatives on how to speak to physicians concerning the FDA's March 2019 communication concerning surgical stapler adverse events, id., whether Dr. Rose reviews safety information communicated in warning letters from the FDA and would have chosen the surgical stapler used in Corrigan's surgery, id. at 43-45, and whether the FDA's March 2019 letter to physicians drew on data from adverse events, id. at 45.

As an initial matter, the Court issued its scheduling order on January 9, 2023, and fact discovery was due to be completed on November 14, 2023.  See D. 63 at 38; see also D. 36. Plaintiffs deposed Dr. Rose on November 6, 2023, D. 67-1, and had ample opportunity to ask him about the March 8, 2019 FDA letter, a document which Plaintiffs included in their opposition to

the motion for summary judgment and which appears to be publicly available.  See D. 63-3.
Plaintiffs have not proffered that this document was solely within Covidien's control or provided
good cause for their delay in asking Dr. Rose these questions during his deposition.  See D. 63 at
42-45.  Plaintiffs also had the opportunity to depose two Covidien employees in February 2024,
D. 82, prior to the summary judgment hearing and could have, but did not, proffer any new
evidence from these depositions that Plaintiffs claim impacts summary judgment, such as how
Covidien trains its representatives to communicate with physicians and whether Covidien took any
steps to correct misinformation or misperceptions regarding the level of risk posed by its surgical
staplers.  See D. 63 at 42-46.

Even considering these avenues of discovery in the light most favorable to Plaintiffs, none
of this information would cure Plaintiffs' inability to prove causation because Dr. Rose testified
that he already was aware of the risk of anastomotic leaks from this particular surgery and did not
review adverse event reports on the FDA website or review any of the EEA instructions prior to
performing Corrigan's surgery.  See D. 67-1 at 11, 22-24; Hicks v. Johnson, 755 F.3d 738, 744
(1st Cir. 2014) (affirming denial of Rule 56(d) request because the additional requested discovery
is "unlikely to garner useful evidence" that would "alter the summary judgment landscape");
McIsaac v. Air & Liquid Sys. Corp., No. 19-cv-10282-NMG, 2023 WL 4409516, at *4 (D. Mass.
July 7, 2023) (denying Rule 56(d) request because plaintiff has not shown that any additional facts
will engender a genuine dispute as to any material fact concerning causation); Jackson v. Johnson
& Johnson & Janssen Pharms., Inc., 330 F. Supp. 3d 616, 624 (D. Mass. 2018) (denying request
for additional discovery pursuant to Rule 56(d) because plaintiff failed to show how additional
discovery will "satisfy his burden of showing medical causation for his alleged injuries").
Moreover, as discussed further below, it is not clear to this Court that Plaintiffs' alternative failure

to warn theory predicated on underreporting of adverse reports is a viable theory and, therefore, any further discovery would be futile.  See Plourde v. Sorin Grp. USA, Inc., 517 F. Supp. 3d 76, 91-92 (D. Mass. 2021) (granting summary judgment on failure to warn claims based on failure to report adverse events to the FDA because "a duty to warn doctors under the learned intermediary doctrine does not correspondingly impose a duty to report to the FDA").  For all these reasons, the Court concludes that Plaintiffs' request for additional discovery is not warranted.

> **B.**     **Motion for Summary Judgment**

> > *1.*     *Standard of Review*

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (citation omitted).  The movant "bears the burden of demonstrating the absence of a genuine issue of material fact."  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  See Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).[5]

---

[5] Covidien contends that summary judgment should be granted whether Massachusetts or Ohio law applies to this action. D. 56 at 10 n.13.  Given that there's no suggestion that the outcome would be different under Ohio law, id.; D. 63; D. 67 at 7; D. 101 at 14, and that Plaintiffs assert

 *2.      Plaintiffs Cannot Establish Causation (Counts II and III)*

Plaintiffs allege that Covidien failed to warn of the risks concerning the EEA surgical stapler under two theories:  breach of warranty (Count II) and negligence (Count III).  D. 4. Causation is an essential element to both claims.  See Kerlinsky v. Sandoz Inc., 783 F. Supp. 2d 236, 242-43 (D. Mass. 2011) (allowing summary judgment as to plaintiff's breach of warranty and negligent failure to warn claims because plaintiff could not prove causation).  To prove a claim of negligence, Plaintiffs must allege "(1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." Jorgensen v. Mass. Port Auth., 905 F.2d 515, 522 (1st Cir. 1990).  To prove breach of warranty on a failure to warn theory, Plaintiffs must allege: "(1) that the defendant manufactured or sold the product; (2) that a defect or unreasonably dangerous condition existed at the time the product left the defendant's hands so that it was not reasonably suitable for the ordinary uses for which goods of that kind were sold; (3) that at the time of his injury, the plaintiff was using the product in a manner that the defendant intended or that could reasonably have been foreseen; and (4) that the defect or unreasonably defective condition . . . was a legal cause of the plaintiff's injury." Alves v. Mazda Motor of Am., Inc., 448 F. Supp. 2d 285, 300 (D. Mass. 2006) (quoting Lally v. Volkswagen Aktiengesellschaft, 45 Mass. App. Ct. 317, 337 (1998)).  A product may be defective and unreasonably dangerous because of a "failure reasonably to warn of the product's foreseeable risks of harm."  Hunt v. Covidien LP, No. 22-cv-10697-RGS, 2024 WL 2724144, at *8 (D. Mass. May 28, 2024) (internal citation and quotation marks omitted).  Under Massachusetts law, where the plaintiffs' allegations

---

and analyze their claims under Massachusetts law, D. 63 at 9-15, this Court analyzes the claims under Massachusetts law.  See D. 22; Bell v. Covidien LP, No. 22-cv-11465-FDS, 2023 WL 3006175, at *3 (D. Mass. Apr. 19, 2023).

for negligence and breach of warranty are based upon a failure to warn theory, the "negligent failure to warn and failure to warn under breach of warranty are to be judged by the same standard: the reasonableness of the defendant's actions in the circumstances." Hoffman v. Houghton Chem. Corp., 434 Mass. 624, 637 (2001).  Under either standard, the Plaintiffs must show that the failure to warn proximately caused the plaintiff's injuries.  See Lubanski v. Coleco Indus., Inc., 929 F.2d 42, 48 (1st Cir. 1991); Calisi v. Abbott Lab'ys, No. 11-cv-10671-DJC, 2013 WL 5441355, at *15 (D. Mass. Sept. 27, 2013) (granting summary judgment because plaintiff could not prove that defendant's alleged ineffective warnings that Humira increased the risk of cancer caused plaintiff's injuries).

Plaintiffs have alleged that Covidien "breached their reporting duties by using the ASR program" which kept important and relevant information from the Plaintiffs and his surgeon, Dr. Rose.  D. 4 ¶ 25.  Specifically, Plaintiffs claim that Covidien's decision to report adverse events through the ASR program, rather than through the publicly available MAUDE database, deprived Dr. Rose of sufficient information and he chose the EEA surgical stapler without full knowledge of all foreseeable risks.  Id. ¶¶ 50-51.  Covidien argues that Plaintiffs' claims fail when analyzed under either a traditional failure to warn theory or a novel underreporting failure to warn theory because Plaintiffs cannot prove causation.  D. 56 at 3.  The Court agrees.

a)    <u>Traditional Failure to Warn Theory</u>

As discussed above, to succeed on a failure to warn claim, Plaintiffs must prove that Covidien's warnings were insufficient and these warnings caused Corrigan's injuries.  Calisi, 2013 WL 5441355, at *15.  Under the learned intermediary doctrine, the manufacturer's duty to warn runs to the physician rather than the patient.  See Plourde, 517 F. Supp. 3d at 88-89 (recognizing that Massachusetts courts apply the learned intermediary doctrine to manufacturers of medical

devices).   Under this doctrine, the manufacturer's duty is fulfilled once it adequately warns the physician.   See Garside v. Osco Drug, Inc., 976 F.2d 77, 80 (1st Cir. 1992).

Plaintiffs contend that the learned intermediary doctrine does not apply where defendants acted in a deceptive and misleading manner.   See D. 63 at 12-14 (citing Commonwealth v. Purdue Pharma,L.P., No. 84-cv-01808-BLS2, 2019 WL 5495866, at *5 (Mass. Super. Ct. Sep. 17, 2019) (holding that the learned intermediary doctrine did not apply because of defendant's deceptive conduct of downplaying the risks of opioid use)).   Here, although Plaintiffs allege that Covidien undermined the level of risk posed by surgical staplers by choosing to report adverse events to the ASR Program instead of MAUDE, Plaintiffs do not persuasively explain how same rises to deceptive conduct as a matter of law.   See D. 63 at 13.   On this undisputed record, the Court is persuaded that the learned intermediary doctrine applies.

Under the learned intermediary doctrine, there is a burden shifting analysis to assess causation:

   (1) the plaintiff carries the initial burden of producing sufficient evidence that the defendant manufacturer failed to warn of a non-obvious risk about which the manufacturer knew or should have known; (2) assuming the plaintiff raises a triable issue on this question, a rebuttable presumption arises that the physician would have heeded an adequate warning; (3) defendant must then come forward with sufficient evidence to rebut that presumption; and (4) once the presumption is rebutted, plaintiff must produce sufficient evidence to create a triable issue on the question of causation.

Liu v. Boehringer Ingelheim Pharms., Inc., 230 F. Supp. 3d 3, 8–9 (D. Mass. 2017) (internal citation omitted).   Plaintiffs claim that "the lack of public information and post-market reporting from Covidien adversely affected the knowledge and decision making of experts" like Dr. Rose and   "directly led to [Dr. Rose] electing to use a surgical stapler without full knowledge of all foreseeable risks."   D. 4 ¶ 51.   Plaintiffs further claim that Covidien failed to "provide warnings regarding the potential for their staplers to malfunction in the very manner that occurred during

[Corrigan's] surgery."  Id. ¶ 104.  As support, Plaintiffs point to Dr. Rose's testimony that "the single most likely cause of a leak would be a device failure" and when asked if he would use an EEA stapler today, Dr. Rose testified that he would need to understand "what the FDA was saying about it from what I may or may not have heard today, before I did."  See D. 63 at 5-7, 16; D. 63-1 at 17-18, 31.  Plaintiffs argue that Dr. Rose relied upon scientific literature which referenced the frequency of anastomotic leaks and which could not have contained accurate information because the source referencing the frequency of leaks was written in 2006 when the ASR reporting data was not publicly available.  See D. 63 at 14-16.  The article titled "Management of Anastomotic Complications in Colorectal Surgery," see D. 63-4, however, does not provide material evidence to show that Covidien's alleged underreporting through the ASR Program influenced Dr. Rose's choice in surgical stapler for Corrigan's surgery.  As Plaintiffs acknowledge, the article does not cite to or state that it relies on any FDA ASR or MAUDE reporting data for its incidence of leak rates.  D. 63 at 15.

Plaintiffs further argue, however, that Dr. Rose was not aware of the true risk because Covidien never directly or indirectly informed him of adverse trends, Dr. Rose was quoting a risk level of three to five percent (purportedly lower than what Covidien knew to be true) and that Dr. Rose would not have agreed to use a device that hypothetically missed "12 to 15 percent" of the time.  D. 63 at 6-7, 15-16.  Plaintiffs rely upon Noorchashm v. Muto, No. 1584-cv-03245, 2021 WL 3612425, at *5 (Mass. Super. Ct. July 8, 2021) for support that there is a triable issue of fact concerning whether Covidien warned Dr. Rose of the true risk of using the surgical stapler.  D. 63 at 15-16.  Id. (denying summary judgment because there was a triable issue of fact concerning whether the defendants had warned about the true risk level that was known to them of contradictions from using their surgical device).  In Noorchashm, the hospital unit chief, who was

considered a learned intermediary, testified that he was kept apprised of FDA and manufacturer warnings and would have passed that information on to physicians and required the physicians to comply with those warnings.  2021 WL 3612425, at *4-6.  Here, Plaintiffs have adduced no similar facts that a hospital administrator would have warned Dr. Rose, and Dr. Rose testified that he did not review any instructions or the FDA ASR Program or MAUDE database.  See D. 56 at 8-9; D. 67-1 at 9, 22-24.

Even assuming *arguendo* that Plaintiffs carried their initial burden on the failure to warn of a non-obvious risk, Covidien has put forth sufficient evidence to rebut the presumption that the physician would have heeded such warning.  Covidien argues that Plaintiffs cannot prevail on their failure to warn claim because Dr. Rose testified that (1) he never reviewed the product warnings or instructions prior to the surgery, (2) that he was already aware of the risks of an anastomotic leak and warned Corrigan of the risks of a leak, (3) he knew that a stapler malfunction could cause a leak, (4) he never reviewed any EEA marketing materials, (5) he never looked up adverse event reports either generally or on the FDA MAUDE or ASR Program website and  (6) that the risks of a leak were well known within the medical community.  D. 56 at 8-9; see D. 67-1 at 12, 22-25.  Based on Dr. Rose's testimony, there is no genuine issue of material fact as to this requisite element of Plaintiffs' failure to warn claim.  See Santos-Rodríguez v. Seastar Sols., 858 F.3d 695, 698 (1st Cir. 2017) (affirming summary judgment because there was undisputed evidence that no one had read the manual for the boat and, therefore, "no warnings in it could have prevented [plaintiff's] injuries"); Wasylow v. Glock, Inc., 975 F. Supp. 370, 378 (D. Mass. 1996) (granting summary judgment because plaintiff's concession that he did not read the warning labels indicated that "no reasonable juror could find a failure to warn").

Plaintiffs contend that Dr. Rose testified that he would have heeded an adequate warning if there was one. D. 63 at 16. There is undisputed evidence, however, Dr. Rose did not look up or research adverse event reports. See D. 56 at 8-9; D. 67-1 at 22-24. Plaintiffs further argue that Corrigan's statements that he would have heeded a warning from Dr. Rose and not undergone the surgery creates a triable issue of fact. D. 63 at 17. In support, Plaintiffs rely upon Mongeon v. Ethicon, Inc., 456 F. Supp. 3d 298, 302-03 (D. Mass. 2020), where the Court denied summary judgment on a failure to warn claim concerning implantation of a medical device that resulted in complications because the doctor testified that he would not have used the implant if he had known about the adverse patient reported outcomes and higher reoperation rates, even though he was aware of the risks beforehand, and the plaintiff testified that she would not have assumed the risk. See D. 63 at 17-18; Mongeon, 456 F. Supp. 3d at 302-03. Mongeon is inapposite, because in that case, the instructions for use did not include any information regarding the relevant risk and plaintiff adduced evidence suggesting that the doctor would have disclosed that risk to the plaintiff if the instructions had disclosed same. Id. at 301-03. Here, the record is that Dr. Rose did not read, or that Dr. Rose relied upon adverse events reports, which he did not research beforehand, to influence his decision to use the EEA stapler. D. 67-1 at 9-10, 37; see Calisi, 2013 WL 5441355, at *17. The Court concludes that Covidien has rebutted the presumption that Dr. Rose would have heeded any warning and that Plaintiffs have not shown a triable issue of material fact as to causation, specifically as to Covidien's instructions or by submitting adverse event reports through the ASR program, D. 67 at 15, and summary judgment on Counts II and III is therefore appropriate.

b)   Underreporting Failure to Warn Theory

Plaintiffs have principally based their failure to warn claims on Covidien's alleged decision to "over-report via ASR and under-report via MAUDE" which led to a "lack of public information"

and Dr. Rose electing to use a surgical stapler without full knowledge of the foreseeable risks.  See D. 4 ¶¶ 48, 51.  According to Plaintiffs, Covidien purposely kept information from the public, and significantly medical providers, by reporting to the ASR Program which was not publicly available until 2019.  Id. ¶¶ 43, 44.  To succeed on this claim, Plaintiffs would need to prove that  Covidien had a duty to report this information publicly.  Plourde, 517 F. Supp. 3d at 88.  Plaintiffs, here, have pointed to no such duty.  See D. 4; D. 63.  Other sessions of this Court have recognized that there is no Massachusetts law that imposes such a duty.  See Plourde, 517 F. Supp. 3d at 91 (granting summary judgment on failure to warn claims based on failure to report adverse events to the FDA because "[p]laintiffs have not met their burden of demonstrating that there is a Massachusetts law that requires manufacturers to make reports to the FDA"); Muoio v. LivaNova Holding USA, Inc., No. 21-cv-11289-LTS, 2021 WL 5410507, at *2 (D. Mass. Oct. 15, 2021) (reasoning that there is no Massachusetts state law duty to report adverse events to the FDA).[6]

Even assuming arguendo that such a duty exists, Plaintiffs' failure to warn claim would still fail because they cannot overcome causation.  As discussed above, Dr. Rose testified that he did not research or review any adverse reports on the FDA website prior to Corrigan's surgery and therefore his decision to use or not use the EEA stapler would not be based on any alleged

_____

[6] Although Plaintiffs cite Glover v. Bauch & Lomb, Inc., 43 F.4th 304, 305–07 (2d Cir. 2022) as authority that there is a duty to report adverse events to a regulator, D. 63 at 22-23, that case is inapposite as the Second Circuit concluded that there was a potential duty to report based solely on Connecticut law.  Glover, 43 F.4th at 305–07.  As Plaintiffs note, the Supreme Judicial Court has not yet resolved the issue of whether there is a Massachusetts duty to report that would form the basis for a failure to warn claim.  D. 63 at 22; see Plourde v. Sorin Grp. USA, Inc., 23 F.4th 29, 37 (1st Cir. 2022) (declining to decide whether a manufacturer's failure to report adverse events to a regulator, like the FDA, gives rise to liability under Massachusetts law and certifying that question to the Supreme Judicial Court).

underreporting.[7]  See D. 63 at 34-37; D. 67-1 at 22-23.  Absent evidence of causation, the Court concludes that Plaintiffs fail to show a genuine issue of material fact and, therefore, summary judgment as to Counts II and III is appropriate.

       3.     *Negligent Misrepresentation (Count IV)*

Covidien contends that it is also entitled to summary judgment on Plaintiffs' negligent misrepresentation claim as a matter of law because it is similarly based on an alleged duty to report under Massachusetts law and is predicated on alleged acts of nondisclosure and omissions as opposed to false information. D. 56 at 19-20.

To prove negligent misrepresentation, Plaintiffs must show that Covidien, "(1) in the course of [its] business, or in a transaction in which [its] had a pecuniary interest, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that [it] (6) failed to exercise reasonable care or competence in obtaining or communicating the information." DeWolfe v. Hingham Ctr., Ltd., 464 Mass. 795, 799–800 (2013).  As with Plaintiffs' failure to warn claims, Plaintiffs cannot establish causation because Dr. Rose testified that he did not rely upon the FDA ASR or MAUDE website prior to Corrigan's surgery.  See D. 63 at 35-36; D. 67-1 at 22-23; see also Jackson, 330 F. Supp. 3d at 624-26 (granting summary judgment on negligent misrepresentation claim because plaintiff failed to show causation).

Although Plaintiffs contend that their negligent misrepresentation claim is not solely premised on acts of nondisclosure and goes beyond the ASR/MAUDE data because Covidien "supplied false information to Dr. Rose, Plaintiffs and the public," D. 63 at 18, Plaintiffs do not

---

[7] Having reached this conclusion as to the failure to warn claim for the reasons stated above, the Court does not reach Covidien's alternative argument that a failure to warn claims based on a theory of underreporting are impliedly preempted under the FDCA.  See D. 56 at 20-21.

specify what false information was conveyed.  Rather, Plaintiffs proffer that additional discovery is needed to understand how Covidien supplied false information to the public.  Id. at 19.  Plaintiffs have had months to conduct discovery, D. 36, and have not provided good cause for why this evidence could not be discovered earlier as the Court has discussed above.  Even considering this purported, additional discovery in the light most favorable to Plaintiffs, Plaintiffs have not adduced sufficient evidence that Dr. Rose relied upon any misstatements from Covidien.  For all these reasons, summary judgment is appropriate as to Count IV.  See Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 226 (1st Cir. 2013) (affirming summary judgment because plaintiffs failed to produce evidence concerning causation).

### 4.    Chapter 93A (Count VI)

Covidien contends that Plaintiffs' Chapter 93A claims necessarily fail because it is predicated on the same theory as Plaintiffs' breach of warranty and negligence-based failure to warn claims.  D. 56 at 11, 18.  Plaintiffs recognize that their 93A claims are premised on the same theory.  D. 63 at 18.  The Court holds that because Plaintiffs' Chapter 93A claim is derivative of their other failure to warn claims, and having adduced no evidence separate and apart from those allegations, summary judgment is granted for Covidien on this claim.  See Plourde, 517 F. Supp. 3d at 94 (granting summary judgment when the Chapter 93A claim was derivative of plaintiff's failure to warn claim that was predicated on a failure to provide accurate information to the FDA); see also Hunt, 2024 WL 2724144, at *10 (granting summary judgment on Chapter 93A claim based on plaintiff's failure to warn theory predicated on Covidien's adverse event reporting for surgical staplers because plaintiff could not establish causation as the treating physician testified that he read the instructions at some point but not before [plaintiff's] surgery; that he has never

looked up adverse event reports in the MAUDE database; that in the years since the ASR Program reports have become public, he has never looked at them; and that he still uses the products).

     5.    *Loss of Consortium (Count V)*

The only remaining claim is Plaintiffs' loss of consortium claim, which Covidien argues is derivative of the other claims and therefore fails as a matter of law.  D. 56 at 21 n.29.   This Court has previously recognized that the loss of consortium claim only survives if all the other claims survive.  D. 22 at 17.  As all the other claims have been dismissed, the Court grants summary judgment on this claim to Covidien.  See <u>Muoio</u>, 2021 WL 5410507, at *2 (dismissing the remaining loss of consortium claim as it was derivative of the other claims which were dismissed).

**C.**    <u>**Motion for Leave to File a Second Amended Complaint**</u>

Plaintiffs seek leave again to amend their complaint to add allegations concerning Plaintiffs' breach of warranty, manufacturing and design defect claims, breach of warranty-failure to warn claim, and negligence claim as well as update Count IV to include additional details of Plaintiffs' pre-suit efforts to resolve the dispute with Covidien.  D. 89 at 1.  Plaintiffs seek amendment under Fed. R. Civ. P. 15(a), D. 89, which states that leave to amend will be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  A motion to amend, however, will be treated differently depending on the timing of when it is filed and "[o]nce a scheduling order is in place, the liberal default rule is replaced by the more demanding 'good cause' standard of Fed. R. Civ. P. 16(b)."  <u>Steir v. Girl Scouts of the USA</u>, 383 F.3d 7, 12 (1st Cir. 2004).  To show good cause, the Court assesses the diligence of the party seeking the amendment, which includes undue delay, bad faith, or dilatory motive as well as futility of the proposed amendments.  <u>Prosight - Syndicate 1110 at Lloyds v. M. L. Schmitt, Inc.</u>, 344 F.R.D. 121, 125 (D. Mass. 2023).  When a motion for summary judgment is pending and discovery has been completed, "it is clearly

established that 'the proposed amendment must be not only theoretically viable but also solidly grounded in the record.'" See Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013) (affirming denial of leave to amend that was filed after summary judgment because no new evidence was offered) (internal citation and quotation marks omitted); see also Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 19 (1st Cir. 2001) (noting that where leave to amend is "not sought until after discovery has closed and a motion for summary judgment has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record" and, under these circumstances, an amendment is "futile unless the allegations of the proposed amended complaint are supported by substantial evidence").

Here, Plaintiffs' proposed seconded amended complaint was submitted after the Court's scheduling order, establishing April 21, 2023 as the last date for proposed amendments, D. 36, and almost two months after Covidien filed for summary judgment and fact discovery closed, except for two remaining fact witnesses. Accordingly, this Court analyzes Plaintiffs' motion for leave under the "good cause standard" and any amendment will be futile unless supported by "substantial evidence."[8]

First, Plaintiffs proffer that their amendment is based upon expected new evidence from the deposition of two Covidien employees, Thomas Hessler and Paul Worthen, who were due to be deposed no later than February 2, 2024. See D. 90 at 3-4; D. 82 (granting extension of time to depose Covidien witnesses to February 2, 2024). Plaintiffs argue that Hessler is familiar with the

---

[8] Plaintiffs claim that their motion is a renewed motion that should be conceivably considered to be within the timeline of the Scheduling Order because it relates back to their initial motion for leave to file a second amended complaint. D. 97 at 2-3. It is well-established that the posture of the case determines how a court evaluates leave to amend, not whether a motion for leave to amend is characterized as "renewed." See Somascan, Inc., 714 F.3d 64 (recognizing that the posture of the case determines the standard to evaluate a leave to amend).

design of the EEA stapler and will be able to speak to, among other things, "the presence of a non-obvious risk about which Covidien knew or should have known," as well as "speak to the warnings and instructions that Covidien provided or should have provided to Corrigan's surgeon."  D. 90 at 4.  Plaintiffs state that Worthen will be able to testify to how Covidien handled adverse event reporting and how this contributed to Covidien's decision-making concerning whether to warn physicians and the public.  Id.  None of this evidence, however, will overcome the causation element in Plaintiffs' failure to warn claims because Dr. Rose testified that he did not read any instructions or warnings on Covidien's EEA stapler, and he did not read any adverse event reports. Even assuming *arguendo* that the evidence could overcome causation, at or in connection with the March 6, 2024 summary judgment hearing, D. 101, Plaintiffs presented no evidence to the Court that Worthen or Hessler testified to material evidence that would alter the current summary judgment landscape or provide the promised evidence that would support their motion for leave to amend.

Second, Plaintiffs seek to expand their theory underlying their failure to warn claims to go beyond Covidien's alleged misuse of the ASR Program by alleging, among other things, that (1) Covidien owed a duty to the hospital where Corrigan's surgery took place to notify them properly of the risks of the stapler, D. 90 at 13-14; D. 90-1 ¶ 126, (2) failed to provide proper warnings to researchers concerning failure rates, D. 90-1 ¶¶ 126-27, and (3) failed to communicate deficiencies in their quality control/assurance system and specifically the March 8, 2019 FDA safety communication letter.  Id. ¶¶ 125-28.  Although Plaintiffs have alluded to and argued at least some of these new theories in their summary judgment motion by stating that Dr. Rose would be interested in what the manufacturer's representative communicates to him concerning the problems with the devices and what the FDA would say about a surgical stapler device, D. 63 at

6-8, Plaintiffs have not adduced substantial evidence in the record to show that Dr. Rose received the March 8, 2019 FDA letter or to rebut Dr. Rose's testimony that he believed he had adequate information to properly evaluate the risks of using the EEA stapler before Corrigan's surgery, those risks are well-known in the community and that he has not experienced any consistent problem with Covidien staplers. See D. 67-1 at 11, 25, 38. Plaintiffs have still failed to prove causation, see Calisi, 2013 WL 5441355, at *17, and leave to amend on this basis would be futile.

Third, Plaintiffs also seek to amend their negligence claims by alleging that new evidence supports that under the doctrine of *res ipsa loquitur*, the surgical stapler would not have otherwise malfunctioned absent Covidien's negligence during Corrigan's surgery. D. 90 at 5-10. Under this theory, Plaintiffs must prove by a preponderance of the evidence that "(1) the instrumentality causing the accident was in the sole and exclusive control and management of the defendant; and (2) the accident is of the type or kind that would not happen in the ordinary course of things unless there was negligence by the defendant." Laspesa v. Arrow Int'l, Inc., No. 07-cv-12370-NG, 2009 WL 5217030, at *7 (D. Mass. Dec. 23, 2009).

Plaintiffs cite the deposition testimony of Plaintiffs' Corrigan and Sheri Bement, and Fred Bement, for the proposition that all three claimed that Dr. Rose stated that the stapler malfunctioned. D. 90 at 8. Plaintiffs also point to Dr. Rose's testimony that a leak can be due to three factors: a device malfunction, patient's biology and surgeon's negligence to support their theory that the EEA stapler must have malfunctioned because Dr. Rose claimed that he did not make a mistake and the pathology report indicated that wound healing would not be compromised. Id. at 8-9. Dr. Rose, however, testified that there are "health factors that we don't understand" and that it would be hard for him to definitely state what caused the leak because "there are just too many variables." D. 67-1 at 32. Based upon this record, the Court does not conclude that the

circumstances surrounding Corrigan's anastomotic leak are so "unusual" that the doctrine of *res ipsa* is applicable.  See Laspesa, 2009 WL 5217030, at *8 (concluding that the doctrine of *res ipsa* was applicable where the hospital reported the event to the FDA because it was so unusual and there was no evidence that the patient's doctor was negligent).

Finally, Plaintiffs move to amend their complaint to add manufacturing and defect claims, D. 90 at 10-13, that the Court previously dismissed, D. 22, and denied leave to amend as futile because Plaintiffs still failed to plead plausible claims, D. 42.  This Court previously declined leave to amend the manufacturing claims based on the same arguments that Plaintiffs make here.  See D. 37; D. 42.  Plaintiffs proffer that new evidence from Worthen's and Hessler's depositions will reveal further information related to Covidien's quality control systems. D. 90 at 11.  Plaintiffs, however, still fail to point to any specific, and not theoretical, evidence of a manufacturing defect. See D. 90 at 10-12; see also D. 22 at 6-8.

This Court also previously dismissed the design defect claims because Plaintiffs failed to plead an alternative safer design.  D. 22 at 10.  Although Plaintiffs proffer in conclusory fashion that "[r]easonable alternative designs were available," D. 90-1 ¶ 113, Plaintiffs have still failed to point to any substantial evidence that a feasible alternative design exists and therefore their amendment is futile.  See Coonan v. Ethicon, Inc., No. 21-cv-10310-TSH, 2021 WL 5111867, at *3 (D. Mass. Nov. 3, 2021) (concluding that "[s]imply asserting that a feasible alternative design exists—without pleading any supportive facts—is not sufficient to plead a defective design claim or to put Defendant[s] on notice as to what that design might be") (internal citation and quotation

marks omitted).[9]  For all these reasons, Plaintiffs' motion for leave to amend to file a second

amended complaint is denied.[10]

## V.      Conclusion

For the foregoing reasons, the Court ALLOWS Covidien's motion for summary judgment,

D. 55, and DENIES Plaintiffs' motion for leave to amend, D. 89.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[9] The Court has previously addressed Plaintiffs' arguments concerning the requirement to plead an alternative design and concluded that Taupier v. Davol, Inc., 490 F. Supp. 3d 430, 446 (D. Mass. 2020) is less persuasive because more recent case law requires Plaintiffs to plead the existence of a feasible alternative design.  See D. 22 at 10 (citing cases); Tersigni v. Wyeth, 817 F.3d 364, 369 (1st Cir. 2016) (affirming summary judgment on design defect claim because plaintiff "cannot offer proof of a reasonable alternative design, as Massachusetts law plainly requires"); but see Aspen Am. Ins. Co. v. BrassCraft Mfg. Co., No. 23-cv-10679-FDS, 2024 WL 308006, at *4 (D. Mass. Jan. 26, 2024) (declining to dismiss the design-defect claim on a Rule 12(b)(6) motion based on plaintiff's failure to not plead a safer alternative design and noting that a design defect claim is a question "better resolved on a full factual record").  Plaintiffs have had ample opportunity to conduct discovery, including deposing two Covidien witnesses that could speak to the design of the stapler, D. 90 at 12-13 and have not proffered any substantial evidence of a design defect that is solidly grounded in the record as required at this stage of requesting leave to amend.  See Somascan, Inc., 714 F.3d at 64.

[10] As motions for leave to amend can be permitted after the date of a scheduling order (albeit judged under a more demanding standard, and there is no evidence that Plaintiffs have repeatedly failed to meet deadlines, the Court does not find any basis to impose sanctions as Covidien requests.  See D. 93 at 21-22; Korinko v. Wells Fargo Home Mortg., No. 18-cv-12632, 2021 WL 2115305, at *2 (D. Mass. Feb. 22, 2021) (imposing sanctions based on repeated failures to obey deadlines for submissions or request extensions of those deadlines).